UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KRISTINE YODER,

        Plaintiff,

        v.

OHIO STATE UNIVERSITY, *et al.*,

        Defendants.

Case No. 2:23-cv-3967
Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on the Motion for Partial Judgment on the Pleadings filed by Defendants Ohio State University ("OSU"), Ohio State University – College of Medicine ("OSU-COM"), Philip N. Tsichlis, and Carol Bradford. (Mot., ECF No. 10.)

For the reasons stated in this Opinion and Order, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion. The Court concludes that Defendants OSU-COM, Dr. Tsichlis, and Dr. Bradford are unnecessary and redundant as defendants and **DISMISSES WITH PREJUDICE** Dr. Yoder's claims against them. Dr. Yoder's claims against OSU for sex discrimination and a hostile work environment under Title VII of the Civil Rights Act of 1964, unequal pay under the Equal Pay Act, and retaliation under Title VII and the Equal Pay Act can continue.

## BACKGROUND

Dr. Kristine Yoder is an associate professor in the Cancer Biology and Genetics Department at OSU-COM. (Compl., ECF No. 1, ¶ 12.) She received her Ph.D in biology in 2000 and worked as an assistant professor at OSU from 2012 until the tenure review board unanimously promoted her to associate professor with tenure in 2020. (*Id.*) Dr. Yoder claims that, despite her

significant accomplishments, she "has been subjected to demeaning comments, [a] hostile work environment, a substantially lower salary than her male colleague, and retaliation." (*Id.* ¶ 15.)

Dr. Yoder alleges that Dr. Philip N. Tsichlis, who was Chair of the Cancer Biology and Genetics Department at OSU-COM at the time, made several discriminatory comments. Dr. Tsichlis told Dr. Yoder to "quit complaining" in May 2020 when she expressed concern about a one-day notice period to draft a lab reopening plan following a shutdown relating to COVID-19. (*Id.* ¶ 16.) She says Dr. Tsichlis has never made similar comments to male colleagues in analogous situations. (*Id.* ¶ 17.) She also accuses Dr. Tsichlis of "routinely and frequently interrupt[ing] his female colleagues," an issue that she raised to him in June 2020 and did not receive a response. (*Id.* ¶¶ 19–20.)

Additionally, Dr. Yoder alleges that OSU and OSU-COM pay her over $60,000 less than her male colleague in the same department, Dr. Vincenzo Coppola, who received tenure at the same time as her. (*Id.* ¶¶ 21–22.) She draws multiple points of contrast between herself and Dr. Coppola. Dr. Yoder's tenure vote was unanimous, while Dr. Coppola's was not. (*Id.* ¶ 22.) Dr. Yoder has obtained ten grants for OSU worth over $5 million and another $9 million for collaborators, while Dr. Coppola has obtained only two grants worth less than $1 million. (*Id.* ¶¶ 13, 23.) And Dr. Yoder has published fourteen senior author papers, while Dr. Coppola has published nine. (*Id.* ¶¶ 14, 23.)

On November 6, 2020, Dr. Yoder filed a Workplace Complaint with OSU and OSU-COM officials alleging that Dr. Tsichlis discriminated against her, engaged in gender-based harassment, and created a hostile work environment. (*Id.* ¶ 26; Workplace Compl., ECF No. 10-1.) Defendants attached a copy of the Workplace Complaint to their Motion. (Workplace Compl.) Dr. Yoder claims that OSU failed to investigate this and other complaints and did not timely respond.

(Compl., ¶ 27.)

Dr. Yoder also filed complaints regarding the pay disparity. (*Id.* ¶ 28.) In a November 2020 email regarding an email sent by Dr. Yoder about a pay disparity complaint, Dr. Tsichlis said, "Life is full of struggles! I hope she resolves her dispute too." (*Id.* ¶ 29.) Separately, on January 4, 2021, Dr. Yoder emailed a formal request for a review of her salary to Dr. Tsichlis. (*Id.* ¶ 28; Salary Emails, ECF No. 10-2.) Citing the disparity in grant awards and publications between her and Dr. Coppola, Dr. Yoder requested an increase in her salary from $159,000 to $250,000 per year. (Salary Emails, PageID 64.) She claims that OSU, OSU-COM, and Dr. Tsichlis "did not follow University procedures or timely respond to her complaints and request for formal review" regarding the pay disparity. (Compl., ¶ 28.) Dr. Yoder's request for an increase in salary was denied, and she appealed the decision. (*Id.* ¶ 28; Salary Emails, PageID 63–64.)

According to Dr. Yoder, Dr. Tsichlis retaliated against her for her various complaints by "ma[king] accusations to" Defendant Carol Bradford, who is the Dean of OSU-COM. (Compl., ¶¶ 10, 30). Dr. Bradford then attempted to relocate Dr. Yoder's research laboratory, which would have violated the terms of NIH grants obtained by Dr. Yoder, but the relocation did not occur. (*Id.* ¶ 30.)

At Dr. Yoder's annual performance review in June 2021, Dr. Tsichlis initially graded Dr. Yoder's performance as "good." (*Id.* ¶ 31.) After she requested documentation about the review, Dr. Tsichlis increased her rating to "great" without comment. (*Id.*) She did not receive a "full five percent merit increase" in her salary, but a junior male colleague did receive the full five percent despite a weaker performance that year. (*Id.* ¶ 32.)

Last, Dr. Yoder accuses Dr. Tsichlis of failing to approve grant paperwork in a timely manner and of failing to approve Dr. Yoder's attempt to hire a research assistant. (*Id.* ¶ 33.) Dr.

Tsichlis claimed Dr. Yoder's grants did not cover hiring a research assistant, but he approved a male colleague's request to hire a research assistant even though that assistant's salary would not be fully funded by outside sources. (*Id.*)

Before filing this lawsuit, Dr. Yoder filed a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC"). (Compl., ¶ 39; EEOC Letter, ECF No. 1-1.) No EEOC action was taken, and the EEOC issued Dr. Yoder a right-to-sue letter in September 2023. (Compl., ¶ 39; EEOC Letter.) In November 2023, Dr. Yoder filed the Complaint against Defendants, alleging Title VII sex discrimination, in violation of 42 U.S.C. § 2000e-2 (count one); a violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (count two); the creation of a hostile work environment, in violation of 42 U.S.C. § 2000e-2 (count three); and retaliation under Title VII and the Equal Pay Act (count four). (Compl., ¶¶ 34–65.) She requests an award of compensatory damages, attorney's fees, litigation costs, and unspecified equitable relief. (*Id.* PageID 10.) Dr. Yoder sues Dr. Tsichlis and Dr. Bradford in their official capacities only. (*Id.* ¶¶ 10–11.)

All Defendants moved for judgment on the pleadings on counts three and four. (Mot., PageID 43.) Defendants OSU-COM, Dr. Tsichlis, and Dr. Bradford also moved for judgment on the pleadings on counts one and two, but OSU did not join the Motion on those two counts. (*Id.* PageID 43–44.) Plaintiff responded in opposition. (Resp., ECF No. 16.) Defendants filed a Reply. (Reply, ECF No. 17.)

## LEGAL STANDARD

### I.    Standard for a Motion for Judgment on the Pleadings

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is essentially

4

identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295–96 (6th Cir. 2008).

To state a claim upon which relief may be granted, plaintiffs must satisfy the pleading requirements set forth in Rule 8(a), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying the plausibility standard from *Twombly*, 550 U.S. at 556). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## II. Standard for Title VII Claims

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may prove a case of discrimination under Title VII by presentation of direct or circumstantial evidence. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012). Title VII discrimination claims, including hostile-work-environment claims, based on circumstantial evidence are governed by the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Masaebi v. Arby's*

*Corp.*, No. 2:19-CV-5271, 2020 WL 1275724, at *3 (S.D. Ohio Mar. 17, 2020).

Even so, "at the motion-to-dismiss stage, a plaintiff is not required to plead facts establishing a *prima facie* case" of discrimination under *McDonnell Douglas*. *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 608–09 (6th Cir. 2012)). Instead, the "plausibility" standard from *Twombly* and *Iqbal* is satisfied for Title VII claims "[i]f a reasonable court can draw the necessary inference from the factual material stated in the complaint." *Keys*, 684 F.3d at 610.

## ANALYSIS

The Court first considers the proper scope of evidence and arguments at this early stage of the case. The Court then turns to Defendants' argument that the claims against Defendants other than OSU should be dismissed as redundant. Finally, the Court addresses Defendants' substantive arguments regarding Dr. Yoder's hostile-work-environment and retaliation claims.

### I. Defendants' Exhibits and Asserted Facts

Defendants attached to their Motion for Judgment on the Pleadings several documents that Plaintiff referred to in the Complaint but did not attach to the Complaint. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But the Court may consider "items appearing in the record of the case and exhibits attached to [a] defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting the motion into a motion for summary judgment. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Defendants attached Dr. Yoder's Workplace Complaint (Workplace Compl.), formal

salary review emails between Dr. Yoder and Dr. Tsichlis from January 4, 2021 to February 5, 2021 (Salary Emails), a letter from Dr. Tsichlis to Dr. Yoder that was attached to one of those emails (Salary Letter, ECF No. 10-3), and a January 21, 2021 email from an OSU HR representative to Dr. Yoder (HR Email, ECF No. 10-4). Dr. Yoder does not dispute Defendants' reliance on those documents as part of their Motion. (*See* Resp.) Regardless, Dr. Yoder directly or indirectly referred to each of these documents in her Complaint, and they are central to her claims that she engaged in protected activity and was retaliated against for that activity. (*See* Compl., ¶¶ 26–28.) Accordingly, the Court considers them without converting Defendants' Motion to one for summary judgment.

Separately, Defendants state in a footnote that the salary of Dr. Coppola, Dr. Yoder's male colleague, "is higher because he holds a separate administrative responsibility," which they claim "plainly constitutes a factor [for the pay disparity] 'other than sex.'" (Mot., PageID 47 n.2.) Dr. Yoder disputes this assertion and argues the Court should not consider it because it is not referred to in her Complaint and is not otherwise part of the factual record. (Resp., PageID 83 n.1.) The Court agrees. Defendants' argument regarding Dr. Coppola's separate administrative responsibility will not be considered for the purposes of the Motion.

## II. Individual Defendants and OSU-COM

Defendants move the Court to dismiss all of Dr. Yoder's claims against OSU-COM, Dr. Tsichlis, and Dr. Bradford because "these claims are redundant and duplicative of Plaintiff's claims against the proper party: OSU." (Mot., PageID 41.) Title VII prohibits "an employer" from discriminating against individuals with regard to sex. 42 U.S.C. § 2000e-2(a)(1). In the Sixth Circuit, "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405

(6th Cir. 1997). Thus, individual capacity Title VII claims against individual employees or supervisors who are not otherwise "employers" are not proper. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). The water is murkier regarding Title VII claims against individuals in their official capacity.

### a. Claims Against Dr. Tsichlis and Dr. Bradford

Dr. Yoder sues Dr. Tsichlis and Dr. Bradford in their official capacities only, not in their individual capacities. This Court has held that "official capacity liability is simply another avenue for a plaintiff to establish liability on an employer." *Maudlin v. Inside Out Inc.*, No. 3:13-CV-00354-TMR, 2014 WL 1342883, at *4 (S.D. Ohio Apr. 3, 2014) (Rose, J.). Still, the Sixth Circuit has stated that "there is support for the proposition that a supervisor may be held liable in his or her official capacity upon a showing that he or she could be considered the 'alter ego' of the employer." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 362 n.2 (6th Cir. 2001) (citing *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1125 (10th Cir. 1993)). Even so, the Sixth Circuit has not resolved that question, and district courts have reached varying conclusions about whether to keep or dismiss Title VII official capacity claims against supervisors where the employer entity is also named as a defendant. *See Maudlin*, 2014 WL 1342883, at *3 (collecting cases).

Some courts have allowed official capacity claims against supervisors to continue where claims are brought against public employers. (*See* Resp., PageID 86–87); *see Cautela v. Ohashi Tecnica U.S.A., Inc.*, No. 2:09-cv-960, 2009 WL 2431090, at *3 (S.D. Ohio Aug. 6, 2009) (Frost, J.) (noting that there "is some support" for an argument that official capacity claims can only be asserted against public, and not private, employer supervisors, but declining to resolve that issue). But here, absent from Dr. Yoder's Complaint and her Response brief is a convincing explanation for *why* Dr. Tsichlis and Dr. Bradford, as Dr. Yoder's supervisor and the Dean of OSU-COM,

respectively, should remain defendants. As Defendants observe, this Court has held that even where a supervisor sued in their official capacity might have enough responsibility and control to be considered the "alter ego" of the employer, "allowing a suit to continue against [that individual] in his official capacity is redundant when [the employer] is already a named Defendant." *Maudlin*, 2014 WL 1342883, at *4.

In her Complaint, Dr. Yoder requests compensatory damages, attorney's fees and costs, interest, and "[a]ll other legal and equitable relief to which Plaintiff is entitled." (Compl., PageID 10.) In general, damages under Title VII are recoverable from the employer, rather than individual officials. *See Wathen*, 115 F.3d at 406; *see also Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 566, 571 (6th Cir. 2000) (allowing an official capacity claim regarding equitable relief, but not an individual capacity claim regarding damages, to continue against a university president where the university itself was also sued). Beyond Dr. Yoder's general request for equitable relief, she does not articulate what equitable relief would remedy her alleged harms other than damages. *See Campbell v. Ohio Dep't of Rehab. & Correction*, No. 2:21-CV-4223, 2022 WL 3682293, at *5 (S.D. Ohio Aug. 25, 2022) (dismissing claims against individual defendants in their official capacities because "if [the plaintiff] establishes Title VII liability against them in their official capacities, she recovers damages from" the defendant employer, who was a public entity).

Of course, if Dr. Yoder's Title VII claim is successful, the Court would have the authority to order appropriate equitable relief. *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 226 (1982) (observing that, under Title VII, a court may issue equitable relief in its discretion). But in her Complaint and in her Response, Dr. Yoder does not explain why Dr. Tsichlis or Dr. Bradford would be especially important to keep as defendants to effectuate such relief. The employer entity, OSU, is already properly named as a defendant, and the Court could order it to carry out relevant

equitable relief. Accordingly, the Court agrees with Defendants that the official capacity claims against Dr. Tsichlis and Dr. Bradford are redundant and unnecessary for the success of Dr. Yoder's core claims against OSU based on nature of her claims and the relief she requested. The Court **DISMISSES WITH PREJUDICE** Dr. Yoder's claims against Dr. Tsichlis and Dr. Bradford, and they are thus terminated as defendants in this matter.

### b. Claims Against OSU-COM

Additionally, Dr. Yoder's claims against OSU-COM are unnecessary and redundant to her claims against OSU. This Court has dismissed claims against OSU's Marching Band where OSU was also sued as a defendant because "the Marching Band is a subdivision of Ohio State, which is not capable of being sued independently of Ohio State." *Hill v. Waters*, No. 2:17-CV-532, 2018 WL 11356706, at *3 (S.D. Ohio Feb. 2, 2018) (Watson, J.). Similarly, OSU-COM is a subdivision of OSU. (*See* Compl., ¶ 9.) As with Dr. Tsichlis and Dr. Bradford, Dr. Yoder does not explain why it is important to keep OSU-COM as a defendant where the primary employer, OSU, is already properly named as a defendant. Accordingly, the Court **DISMISSES WITH PREJUDICE** Dr. Yoder's claims against OSU-COM.

## III.  Sorting Dr. Yoder's Factual Allegations Between Claims

Recent shifts in Title VII law in decisions by the U.S. Supreme Court and the Sixth Circuit require this Court to examine those decisions and to decide how to treat Dr. Yoder's factual allegations regarding her discrimination and hostile-work-environment claims.

### a. Recent Developments in Title VII Law

A plaintiff may bring two different types of claims under Title VII: they can allege "that either (1) an employer engaged in 'discrete discriminatory acts' such as 'termination, failure to promote, denial of transfer, or refusal to hire'; or (2) the employer's 'repeated conduct' created a

10

hostile work environment." *Ogbonna-McGruder*, 91 F.4th at 840 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)). Dr. Yoder alleges both "discrete discriminatory acts," which may be actionable as claims for discrimination or retaliation, and a hostile work environment. While disparate-treatment claims, like Dr. Yoder's sex discrimination claim, are based on individual discrete acts, hostile-work-environment claims are "'based on the cumulative effect of individual acts,' many of which are not actionable on their own." *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 899 (6th Cir. 2024) (quoting *Morgan*, 536 U.S. at 115).

Notably, "allegations of discrete acts may be alleged as separate claims, and as such 'cannot properly be characterized as part of a continuing hostile work environment.'" *Ogbonna-McGruder*, 91 F.4th at 840 (quoting *Sasse v. U.S. Dep't of Labor*, 409 F.3d 773, 783 (6th Cir. 2005)). Accordingly, the Court "must determine which of [Dr. Yoder's] allegations constitute the kind of separately actionable discrete acts that are excluded from consideration in [her] hostile-work-environment claim." *McNeal*, 117 F.4th at 899. Even so, "when a discrete act also contributes to a different and continuing harm—for example, the pervasive humiliation of an employee—its ancillary impacts may be considered in a hostile-work-environment claim." *Id.* at 902 n.14. Thus, a plaintiff is barred "from including in a hostile-work-environment claim only those discrete acts that result in a separate discriminatory harm to the terms and conditions of employment that does not 'contribut[e]' to the alleged environment of harassment." *Id.* at 903 (quoting *Ogbonna-McGruder*, 91 F.4th at 840).

In distinguishing between discrete acts of discrimination and incidents that can contribute to a hostile-work-environment claim, courts must recognize that "not every allegedly discriminatory incident is actionable simply because it is a discrete act." *Id.* Because "only discrete acts that are 'adverse employment decision[s]' can be challenged in a disparate-treatment claim,"

courts must consider whether the discrete acts in question qualify as adverse employment decisions under Title VII. *Id.* (quoting *Morgan*, 536 U.S. at 114).

Recently, the U.S. Supreme Court held that, to challenge a discrete act like an allegedly discriminatory job transfer as an "adverse employment action" under Title VII, a plaintiff need only show "*some* harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024). In doing so, the Supreme Court abrogated circuit court cases that required such plaintiffs to show harm that was "significant" or "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355; *see McNeal*, 117 F.4th at 900 (noting abrogation). Thus, now, "[i]n short, the employment action is adverse if it leaves the employee 'worse off respecting employment terms or conditions.'" *McNeal*, 117 F.4th at 900 (quoting *Muldrow*, 601 U.S. at 355). In *McNeal*, the Sixth Circuit held that the holding in *Muldrow* applies to all "disparate treatment claim[s]" under Title VII, like Dr. Yoder's Title VII claim, not just those involving allegedly discriminatory job transfers. *Id.*

### b. Dr. Yoder's Factual Allegations

In addition to her sex-based pay discrimination claim, Dr. Yoder alleges a hostile-work-environment claim regarding the "pattern and practice of conduct from Defendant Tsichlis involving harassing behavior and different treatment between female and male colleagues." (Resp., PageID 89.) She argues the Court should consider the following alleged facts as part of the hostile-work-environment claim: Dr. Tsichlis (1) "sent demanding emails about Dr. Yoder to others when she expressed concerns about department policies or pay discrepancies," (2) "frequently and routinely interrupted" her and other female colleagues and ignored their complaints about his behavior, (3) "did not demean men who questioned policies and never

interrupted fellow male colleagues during meetings," (4) failed to follow university procedures regarding Dr. Yoder's complaints about his behavior and about her request for a pay disparity review, (5) delayed paperwork and ultimately denied Dr. Yoder's request for a research assistant but timely approved her male colleague's similar request, and (6) purposefully refused to speak to Dr. Yoder during her annual review even though he was supposed to lead that review. (*Id.*, PageID 89–90.) All these facts are alleged in Dr. Yoder's Complaint. (*See* Compl., ¶¶ 12–33.)

Conversely, Dr. Yoder's sex discrimination allegation is based on Defendants' decision to pay her less than her lower-performing but otherwise comparable male colleague. (*See* Compl., ¶¶ 35–37.) Of the actions listed by Dr. Yoder as part of her hostile-work-environment claim, only the facts relating to her pay disparity review and her request for a research assistant potentially constitute discrete acts actionable as adverse employment decisions "respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354–55. Even so, Dr. Yoder's alleged failure to follow university procedures regarding Dr. Yoder's request for a pay disparity review is distinct from Defendants' ultimate discrete act of refusing to remedy the pay disparity. *See Ogbonna-McGruder*, 91 F.4th at 838, 840 (holding that even though the plaintiff's work reassignment itself was a discrete act separably actionable as a disparate treatment claim, the accompanying explanation was still properly considered as part the plaintiff's hostile-work-environment claim); *McNeal*, 117 F.4th at 902–03 (applying *Ogbonna-McGruder*).

And although Dr. Yoder might eventually argue that Dr. Tsichlis's refusal to approve her request for a research assistant is actionable as an adverse employment action regarding a condition of employment, she has not advanced that theory of liability. Thus, in short, none of Dr. Yoder's alleged hostile-work-environment facts is readily identifiable as a discrete act qualifying as actionable "adverse employment action" under Title VII. Accordingly, for the purposes of

Defendants' Motion only, the Court need not cleave off any of the hostile-work-environment facts advanced by Dr. Yoder and considers them all below.

## IV.    Dr. Yoder's Hostile-Work-Environment Claim

### a.    Title VII Hostile-Work-Environment Standard

At the pleadings stage, a plaintiff claiming a hostile work environment must allege that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Morgan*, 536 U.S. at 116 (cleaned up). Ultimately, a plaintiff claiming a hostile work environment based on sex must prove that,

> (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [sex], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)).

Factors to consider regarding whether a work environment is sufficiently hostile to state a claim under Title VII "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Ultimately, "the court must consider the totality of circumstances" and the cumulative effect of the discriminatory actions when deciding whether the alleged conduct was sufficiently severe or pervasive. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999).

Before the Sixth Circuit issued its decision in *McNeal*, the Parties here filed briefs disputing how to reconcile the "severe or pervasive" hostile-work-environment standard with the "some

14

harm" standard from *Muldrow* for disparate-treatment claims. (Resp., PageID 88; Reply, PageID 154.) In *McNeal*, the Sixth Circuit resolved the issue, holding that "[b]ecause hostile-work-environment claims arise out of the same statutory language as disparate-treatment claims, *Muldrow*'s holding that Title VII does not require plaintiffs to show 'significant' harm applies to both types of claims." 117 F.4th at 904 (quoting *Muldrow*, 601 U.S. at 355). Accordingly, "when [a court] consider[s] whether a hostile-work environment was severe or pervasive enough to violate Title VII, [the court] effectively asks whether it left an employee 'worse off respecting employment terms or conditions.'" *Id.* (quoting *Muldrow*, 601 U.S. at 355).

### b. Dr. Yoder's Hostile Work Environment Evidence

The evidence Dr. Yoder relies on for her hostile-work-environment claim is recounted above. (*See supra*, Analysis Section III.b.) OSU contends that Dr. Yoder's claim fails on the third and fourth prong of the standard, arguing that any alleged harassment she experienced was not based on her gender and was not sufficiently severe or pervasive to alter the conditions of her employment. (Mot., PageID 51; Reply, PageID 156–57.) Taking Dr. Yoder's allegations together and accepting them as true, as this Court must, the allegedly harassing behavior is sufficiently frequent and burdensome enough to raise an inference that the alleged harassment left Dr. Yoder worse off regarding her conditions or terms of employment.

Dr. Yoder alleges a pattern and practice of harassing conduct from her supervisor and Department Chair, Defendant Tsichlis, that manifested in several forms. First, Dr. Yoder alleges frequent and repeated interruptions of female colleagues, and not male colleagues, coupled with critical emails and communications specifically targeting Dr. Yoder and female colleagues and not male colleagues. Second, Dr. Yoder alleges that the cumulative effect of Dr. Tsichlis's negative attitudes and treatment of her and her female colleagues lead to an overall harassing environment

that creates a burdensome workplace condition not imposed on male colleagues. Third, Dr. Yoder alleges that Dr. Tsichlis's negative attitudes and treatment manifested as part of important meetings and decisions about her employment terms, including his refusal to interact with her at her annual review, his delay of paperwork relating to her workplace complaints, and his decision to grant a male colleague's request for a research assistant while denying Dr. Yoder's similar request. Dr. Yoder's allegations repeatedly emphasize the disparate treatment of her and her female colleagues as compared to her male colleagues, some of whom, she alleges, were lower performing.

The negative effects of these alleged facts, taken as true and viewed collectively, are heightened by the fact Dr. Tsichlis serves as Dr. Yoder's supervisor and Department Chair. As a person in a position of authority over Dr. Yoder, Dr. Tsichlis's comments and actions disfavoring Dr. Yoder and female colleagues potentially reflect on their opportunities and position within the office.

Ultimately, Dr. Yoder's factual allegations add up to an inference that Dr. Tsichlis's treatment of Dr. Yoder and her female colleagues was based on sex and left Dr. Yoder worse off respecting an employment term or condition.

## V. Dr. Yoder's Retaliation Claim

Dr. Yoder asserts a claim for retaliation under both Title VII and the Equal Pay Act. (Compl., ¶ 64.) Federal law prohibits retaliating against employees for filing complaints of discrimination under Title VII and of unequal pay under the Equal Pay Act, 29 U.S.C. § 215(a)(3). *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 514 (6th Cir. 2021).

### a. Retaliation Standard

When a plaintiff relies on circumstantial evidence of discrimination to prove retaliation,

16

the Court uses the *McDonnell-Douglas* framework for both types of claims. *Id.* Under that standard, a plaintiff must establish a *prima facie* case of retaliation by showing "(1) she engaged in activity protected under Title VII; (2) [the defendant] knew that she exercised her protected rights; (3) an adverse employment action was subsequently taken against her; and (4) [her] protected activity was the but-for cause of the adverse employment action." *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730–31 (6th Cir. 2014)). At this stage, because Dr. Yoder might ultimately prove her case through direct or circumstantial evidence, Dr. Yoder need not allege all facts establishing her *prima facie* case under *McDonnell-Douglas*; rather, she must allege facts sufficient to raise an inference that OSU is liable for retaliation. *See Keys*, 684 F.3d at 610.

For the purposes of the Motion, Defendants do not dispute that Dr. Yoder engaged in protected activity and that OSU knew she exercised a protected right, but Defendants reserve the right to contest the latter issue once the record is established. (Reply, PageID 160 n.6.) Dr. Yoder alleges that Defendants retaliated against her for official complaints of sex discrimination and pay disparities by attempting to move her laboratory, refusing to approve a research assistant, scoring her lower on a performance review, and granting her a salary increase less than "the full five percent merit increase." (Compl., ¶¶ 32, 61.) But in her Response, Dr. Yoder argues only that Defendants' decision to grant her a merit salary increase less than the five percent maximum (as compared to a lower-performing, junior male colleague received the full five perecent increase) constitutes an adverse employment action for the purposes of defending against Defendants' Motion. (Resp., PageID 93–94.) She argues that the other events contribute to the "totality of facts that culminated in the lower merit increase" under the causation prong of the retaliation standard and reserves the right to advance a retaliation claim based on those events at a future stage. (*Id.*,

17

PageID 93–94, 93 n.4.)

   **b. "Adverse Employment Action" in the Retaliation Context**

   Notably, the U.S. Supreme Court's holding in *Muldrow* lowering the bar for what constitutes an "adverse employment action" in the disparate treatment and hostile-work-environment contexts does *not* apply to Title VII's anti-retaliation provision. *See Muldrow*, 601 U.S. at 354–55, 357; *McNeal*, 117 F.4th at 904 (extending the holding of *Muldrow* to hostile-work-environment claims). Instead, the Court left undisturbed its previous holding that "the [anti-retaliation] provision applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm." *Muldrow*, 601 U.S. at 357 (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)).

   In a case decided after *Muldrow*, the Sixth Circuit observed that "an employer's withholding of a discretionary raise or bonus that an employee is otherwise entitled to based on the terms and conditions of employment may constitute an adverse action." *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 786 (6th Cir. 2024) (citing *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008)). Notably, the court in *Milczak* held that, at the summary judgment stage, the plaintiff "d[id] not create a material question that he was entitled to an annual raise or annual bonus greater than what he received," and thus "no reasonable juror could find that [defendant's failure to give him a greater increase] constituted an adverse action." *Id.*

   Here, Dr. Yoder alleges that "[s]alary determinations are supposed to be based on performance, in particular on grants brought into the University." (Compl., ¶ 24.) She does not explain in her Complaint whether her employment terms and conditions entitle her to a certain percent of a salary increase based on certain actions. But, accepting all Dr. Yoder's allegations as true, her assertion that she did not receive a full five percent merit increase to her salary after she

18

engaged in protected conduct is sufficient to raise an inference that she did not receive a level of salary increase that she may have been entitled to receive. In other words, it is plausible that facts may be revealed through discovery to support her assertion that Defendants' failure to grant a full five percent salary increase constituted an "adverse employment action" to satisfy the third prong of the *prima facie* retaliation standard. Unlike the plaintiff in *Milczak*, whose claim was insufficient at the summary judgment stage, Dr. Yoder is held to a lower factual standard at this stage, and facts may yet be revealed to support this part of her retaliation claim.

### c. Causation

"To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in the protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Additionally, "[a]lthough no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id.* Furthermore, if "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

As explained above, it is not disputed that Dr. Yoder engaged in protected activity because, as Defendants acknowledge, she filed the Workplace Complaint in November 2020 prior to the allegedly retaliatory salary increase. (Reply, PageID 160.) But Dr. Yoder does not limit her claimed protected activity to just that complaint—she claims to have filed multiple "official complaints of sex discrimination and pay disparities," after which retaliation occurred. (Compl., ¶

61.) Additionally, she does not specify when the decision to grant her a lower salary increase than her lower-performing male colleague occurred. (*See id.* ¶¶ 31–32.) Accordingly, it is not clear at this stage the precise temporal proximity of her protected activity and the allegedly retaliatory conduct.

Regardless, the burden of establishing a *prima facie* case of retaliation is "not onerous, but one easily met," especially at the pleadings stage. *Nguyen*, 229 F.3d at 563. And Dr. Yoder has pleaded facts in addition to the potential temporal proximity—including her repeated complaints and objections to Defendants' allegedly discriminatory treatment—to suggest that an adverse employment action was taken in retaliation for her protected activity. At this point, Dr. Yoder's Complaint draws a sufficient causal connection between her protected activity and the allegedly retaliatory decision to grant her a lower salary increase than her lower-performing male colleague and, potentially, lower than what she was owed under her conditions and terms of employment.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Judgment on the Pleadings. (ECF No. 10.) All Dr. Yoder's claims against Dr. Tsichlis, Dr. Bradford, and OSU-COM are **DISMISSED WITH PREJUDICE** because they are redundant to the claims against OSU. Dr. Yoder's claims against OSU can continue.

This case remains open.

**IT IS SO ORDERED.**

3/10/2025                                    s/Edmund R. Sargus, Jr.
DATE                                         EDMUND A. SARGUS, JR.
                                             UNITED STATES DISTRICT JUDGE